IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

TARA DONELSON                                                                    PLAINTIFF

V.                                                        CAUSE NO. 3:14-CV-155-CWR-FKB

DENNIS C. SWEET, ET AL.                                                      DEFENDANTS

<u>ORDER</u>

Before the Court is a motion for summary judgment filed by Dennis C. Sweet and his

eponymous law firm. Docket No. 37. After considering the arguments and applicable law, the

Court concludes that the motion should be granted in part and deferred in part.

**I.       Factual and Procedural History**

The facts of this case are not known with precision, but the following rough outline can

be discerned from the parties' various filings and attachments.

On April 9, 2006, Mayor Frank Melton of Jackson, Mississippi, accompanied by several

Jackson Police Department officers, went to Beverly Jean Jackson's home. The Mayor banged

on her door and engaged in a shouting match with the residents inside. Guns were alleged to

have been drawn; a drug-sniffing dog was present. The media was apparently on the scene. It is

not clear if the verbal exchange escalated into a physical altercation.[1]

---

[1] Jackson later claimed that Melton's visit was retaliatory. Docket No. 48, at 58. There is reason to believe that is true. According to a local newspaper, Melton was "obsessed" with pursuing a criminal prosecution against Jackson's son, Albert "Batman" Donelson. Donna Ladd, *'Batman' Speaks: The JFP Interview with Albert Donelson*, Jackson Free Press, Apr. 26, 2006. When Donelson was acquitted, Melton was displeased and vowed to arrest the son:

> Melton had told the JFP prior to the verdict that he would arrest "Batman" Donelson in the courtroom the moment he was acquitted. Right before the verdict came down, he said he would arrest him at the sheriff's office next door. Five minutes after the verdict, he said that JPD Chiefs Shirlene Anderson and Roy Sandefer were headed to Melton's home to meet him; then they would go to the Hinds County Jail to arrest Donelson.

Donna Ladd, *UPDATED: 'Batman' and Gang Acquitted*, Jackson Free Press, Apr. 7, 2006. Melton was indeed persistent: he arrived at Jackson's door just two days after her son was acquitted. *See also* Donna Ladd, *'Batman' Acquitted; Melton 'Arrests' Own Witness*, Jackson Free Press, Apr. 12, 2006 ("The mayor ended the week Sunday night, again with shotgun in hand. He walked up onto the porch of Albert Donelson's mother on Wood Street,

Ms. Jackson and her family, including her daughter Tara Donelson, soon engaged Dennis Sweet and his law firm to represent them against Melton, the City, its Police Department, and several individual officers. In June 2006, Sweet sent the Mayor a Notice of Claim outlining his clients' factual allegations and describing the causes of action he would bring if a settlement was not reached. Docket No. 48. With no settlement forthcoming, in February 2007 Sweet filed a 21-page complaint against Melton et al. in the state courts of Mississippi.

Something went wrong with that suit. Although Sweet appears to have propounded some discovery at the outset of the case, the record does not establish that he filed anything on his clients' behalf between February 6, 2008, and June 21, 2012. As a result, at a mass docket call held on that later date, the trial judge dismissed the suit for failure to prosecute. Neither Sweet nor any of his associate attorneys attended the docket call. Eight months later, Sweet moved for reconsideration, but the motion was denied.

In 2013, Jackson and her family filed a complaint against Sweet with the Mississippi Bar. We do not know the result of that proceeding as defendant Mississippi Bar has submitted no evidence in this lawsuit. She may have been unhappy with that proceeding, though, because she filed this suit in 2014.

In her amended complaint, Jackson – now listing her family members as co-plaintiffs – named Sweet, his law firm, the Mississippi Bar, and other parties as defendants.[2] She alleged that Sweet reached a clandestine agreement with City leaders to fail to prosecute the state court suit,

---

flanked by bodyguards with machine guns, to send his 'here I am' message."); Docket No. 48, at 10 ("Later that night, Mayor Melton stood by his actions and is reported on WLBT-TV3 website as having said, 'I don't give a dam [sic] what they thought.'").

[2] The only parties represented by counsel are Sweet, his law firm, and the Mississippi Bar. Donelson is receiving assistance from writ-writer Charles Torns. Her reliance on Torns is unwise. While he was in prison, Torns filed so many meritless lawsuits that he was barred from additional filing unless he was in imminent danger of serious physical injury. *See Torns v. Miss. Dep't of Corr.*, 421 F. App'x 316, 317 (5th Cir. 2010). This Court is certain Donelson could represent herself better without Torns' "advice." For his part, Torns is cautioned that further unauthorized practice of law could subject him to criminal penalties under Mississippi Code § 73-3-55.

and that the Bar failed to supervise and discipline Sweet. She sought damages for legal malpractice; violations of her constitutional rights under 42 U.S.C. §§ 1983, 1985, and 1988; and violations of her statutory rights under the Civil Rights Act of 1964.

Jackson died during the pendency of this case and Tara Donelson was substituted in her place. The docket sheet indicates that no discovery occurred during the allotted period. The parties agree that no experts were designated.

The present motion for summary judgment followed. Despite receiving numerous extensions totaling six months, Donelson has not responded to the motion.

## II.    Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking to avoid summary judgment must identify admissible evidence in the record showing a fact dispute. *Id.* at 56(c)(1). "Once a summary judgment motion is made and properly supported, the nonmovant must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial. Neither 'conclusory allegations' nor 'unsubstantiated assertions' will satisfy the nonmovant's burden." *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (citations and quotation marks omitted).

The Court views the evidence and draws reasonable inferences in the light most favorable to the nonmovant. *Maddox v. Townsend and Sons, Inc.*, 639 F.3d 214, 216 (5th Cir. 2011). But the Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *McCallum Highlands, Ltd. v. Wash. Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *as revised on denial of reh'g*, 70 F.3d 26 (5th Cir. 1995).

"These rules apply equally to *pro se* litigants. Although *pro se* pleadings must be viewed liberally, such plaintiffs are still required to follow Rule 56 of the Federal Rules of Civil Procedure." *Horton v. Faurecia Automotive*, No. 3:13-CV-21-DPJ-FKB, 2014 WL 2196310, at *2 (S.D. Miss. May 27, 2014).[3]

## III.    Discussion

### A.    Donelson's Federal Claims

To succeed on a § 1983 claim, a plaintiff must prove that her federal rights were violated "by a person or persons acting 'under color of' state law." *Bass v. Parkwood Hosp.*, 180 F.3d 234, 241 (5th Cir. 1999) (citation omitted). Private actors – such as a private attorney and his law firm – are liable under § 1983 *only* when their conduct is "fairly attributable to the State." *Id.* (quotation marks and citation omitted).

There are several ways to prove that a private actor's conduct should be attributed to the State. *Id.* at 241-42. One way is to show that the State coerced the private actor into committing the constitutional violation. *Id.* at 242. Another way is to prove that the private actor was "a willful participant in joint activity with the State or its agents." *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994) (quotation marks and citation omitted).

In this case, the amended complaint suggests that Donelson is attempting to show that Sweet was a willful participant in joint activity with State agents. But there is no evidence of any such joint activity. Specifically, there is no proof of an illicit agreement between Sweet and Melton to drop Jackson's state court suit. Donelson's § 1983 claim cannot proceed.

---

[3] Although Donelson never responded to the motion, the Court's work is not done. Summary judgment cannot be granted by default. *Johnson v. Pettiford*, 442 F.3d 917, 918-19 (5th Cir. 2006). "If the party who moves for summary judgment fails to discharge its burden of showing the absence of a genuine issue concerning any material fact, 'summary judgment must be denied – even if the nonmoving party has not responded to the motion.'" *Dillon v. Miss. Dep't of Human Srvs.*, No. 2:04-CV-94-KS-JMR, 2006 WL 181396, at *2 (S.D. Miss. Jan. 18, 2006) (quoting *John v. State of La.*, 757 F.2d 698, 708 (5th Cir. 1985)).

Donelson's §§ 1985 and 1988 theories are also unavailing. Section 1985 requires proof of a conspiracy to violate civil rights. *See Bryant v. Military Dep't of Mississippi*, 597 F.3d 678, 687 (5th Cir. 2010). Donelson has not submitted evidence of a conspiracy. And, while § 1988 allows prevailing parties in civil rights cases to recover their reasonable attorney's fees, it cannot be applied here because Donelson is not a prevailing party.

The Court notes that the amended complaint once mentions the Civil Rights Act of 1964. It is not clear how Jackson intended to wield that statute here. In any event, without briefing or evidence supporting such a claim at this juncture – more than six months after the filing of the motion for summary judgment – summary judgment is appropriate on this cause of action.

### B.    Donelson's State Claim

What remains is Donelson's legal malpractice claim. In Mississippi, a plaintiff "claiming negligence in a legal malpractice action must prove by a preponderance of the evidence (1) the existence of an attorney-client relationship, (2) negligence on the part of the lawyer in handling his client's affairs entrusted to him, and (3) proximate cause of the injury." *Byrd v. Bowie*, 933 So. 2d 899, 904 (Miss. 2006). This usually requires expert testimony. *Id.*

The defendants' sole argument for summary judgment is that this claim cannot proceed "as a matter of law" because Donelson has not tendered an expert on the subject.

The Mississippi Supreme Court, however, "has carved out some exceptions to the general rule . . . ." *Id.* One exception holds that a plaintiff "does *not* require expert testimony to establish the negligence of an attorney who is ignorant of the applicable statute of limitations *or who sits idly by and causes the client to lose the value of his claim for relief*." *Id.* at 905 (emphasis added); *see also Pierce v. Cook*, 992 So. 2d 612, 617 (Miss. 2008) ("[T]his Court has recognized that experts are not required in all legal-malpractice cases."). The defendants have not addressed

this latter exception even though it fairly encompasses the heart of Donelson's case, and it is too late to address it at this advanced stage of the briefing.

On this record, the Court cannot grant the relief the defendants request. It will decline to adjudicate Donelson's legal malpractice claim today. The claim is carried with the case.

**IV.     Conclusion**

The motion for summary judgment is granted as to the federal claims and deferred as to the state-law legal malpractice claim.

**SO ORDERED**, this the 31st day of December, 2015.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE